**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **MADISON JOINT VENTURE LLC,** | : | **Civil Action No. 19-8012 (JMV)** |
| **Plaintiff,** | : | |
| **v.** | : | **REPORT AND RECOMMENDATION** |
| **CHEMO RESEARCH S.L., et al., Defendants.** | : | |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Savant Neglected Diseases LLC ("Savant") to intervene and stay these proceedings [ECF No. 78]. Plaintiff Madison Joint Venture LLC ("Madison") opposes Savant's motion [ECF No. 86]. Defendants Chemo Research S.L. ("Chemo") and Exeltis USA, Inc. ("Exeltis") (collectively "Defendants") take no position with respect to Savant's request to intervene; however, they support Savant's request for a stay of this matter [ECF No. 87]. For the reasons set forth below: (1) Savant's motion to intervene is **GRANTED**; and (2) it is respectfully recommended that Savant's motion to stay be **GRANTED in part**.

## I. BACKGROUND

Madison initiated this action by filing a Complaint against Defendants Chemo, Exeltis, and Sergio Sosa-Estani ("Estani") on March 6, 2019. ECF No. 1. On May 31, 2019, Defendants Chemo and Exeltis filed a motion to dismiss the Complaint for, among other issues, lack of subject matter jurisdiction and lack of personal jurisdiction over Chemo. ECF No. 14. On June 27, 2019, the Court entered a Pretrial Scheduling Order, which stayed general discovery while the parties engaged in jurisdictional discovery. ECF No. 21. The Court administratively terminated

Defendants' motion on August 15, 2019 pending the completion of jurisdictional discovery. ECF No. 31.

On August 30, 2019, Defendants filed a motion to stay discovery pending the resolution of a related litigation in Delaware. ECF No. 32. The Court denied the motion without prejudice on October 31, 2019. ECF No. 43. Thereafter, on September 15, 2020, the parties stipulated to Madison filing an Amended Complaint. ECF No. 72. Madison filed its Amended Complaint on September 17, 2020. ECF No. 75.

Madison's claims in the Amended Complaint arise out of Defendants' "improper acquisition, use, and disclosure of Madison's highly valuable trade secrets and confidential information, and their intentional interference with an exclusive license agreement." ECF No. 75, ¶ 1. Madison alleges that Defendants' misappropriation enabled them to "beat KaloBios Pharmaceuticals, Inc. ("KaloBios")[1] in the race for Food & Drug Administration ("FDA") approval of benznidazole, a critical treatment for Chagas disease in children, and the accompanying award of a Priority Review Voucher ("PRV")." *Id.*

According to Madison, KaloBios, as part of its bankruptcy reorganization, acquired an exclusive license from Savant in June 2016. ECF No. 75, ¶ 2. The license agreement gave KaloBios the exclusive right to use clinical data compiled by Estani, an Argentinian scientist, relating to the treatment of Chagas disease (the "Estani Data"), which KaloBios would use in seeking expedited FDA approval of benznidazole as a treatment for Chagas disease. ECF No. 75, ¶¶ 2-3. Savant and KaloBios memorialized the transaction in an Agreement for the Manufacture, Development and Commercialization of Benznidazole for Human Use ("MDC").[2] ECF No. 75, ¶ 39.

[1] On August 7, 2017, KaloBios changed its name to Humanigen, Inc. ("Humanigen"). ECF No. 75, ¶ 1, n. 1.
[2] A copy of the MDC may be found at ECF No. 35-3.

Meanwhile, Chemo was seeking its own approval for benznidazole in the United States through its affiliate, Exeltis. ECF No. 75, ¶ 41. Madison claims that Chemo and Exeltis needed the Estani Data to seek expedited FDA approval, and so they undertook an effort to induce Estani to disclose the Estani Data to them despite the existence of the exclusive license. ECF No. 75, ¶¶ 41-44. Madison alleges that Chemo successfully induced Estani into providing Defendants with the Estani Data, and the Defendants submitted a Section 505(b)(2) application to the FDA, supported by the Estani Data, on December 29, 2016. ECF No. 75, ¶¶ 44-51. The FDA granted Chemo and Exeltis approval for benznidazole on August 29, 2017. ECF No. 75, ¶ 52. On February 27, 2018, Humanigen, formerly KaloBios, transferred to Madison all its assets and claims related to benznidazole. ECF No. 75, ¶ 1, n. 1. Accordingly, Madison asserts the claims of trade secret violations, unfair competition, tortious interference with contractual relations, breach of the duty of loyalty, and unjust enrichment against Defendants in this case. *See* ECF No. 75.

After Madison filed its Amended Complaint, Savant filed a motion to intervene and stay the proceedings in this matter. ECF No. 78. In its proposed complaint, Savant seeks to assert claims against Defendants for their misappropriation of the Estani Data. *See* ECF No. 78-3. Like Madison, Savant alleges that Defendants induced Estani into providing them with the Estani Data. ECF No. 78-3, ¶¶ 11, 93-94. Savant, however, alleges that due to Humanigen's material breaches of the MDC, any rights Humanigen possessed concerning the Estani Data reverted to Savant. ECF No. 78-3, ¶ 114. Savant also claims that under the MDC, it was promised, among other things, "Milestone Payments," proceeds from the sale of a PRV, and a percentage of actual sales of benznidazole. ECF No. 78-3, ¶¶ 77, 111. Savant alleges that but-for Defendants' misappropriation, Humanigen would have completed the FDA process and Savant would have received the

Milestone Payments, proceeds from the sale of a PRV, and a percentage of actual sales of benznidazole. ECF No. 78-3, ¶ 111.

As a result of the dispute over Savant's recovery with respect to Defendants' alleged misappropriation of the Estani Data, Savant filed an action against Madison in Delaware, which has been consolidated with a case Humanigen filed against Savant in Delaware state Superior Court. The matter, *Humanigen, Inc., et al. v. Savant Neglected Diseases LLC* (the "Delaware Litigation"), is currently pending and scheduled for trial on April 12, 2021.

## II. DISCUSSION

### A. Savant's Motion to Intervene

The Court will first consider whether Savant should be permitted to intervene in this matter. Savant argues that it should be permitted to intervene as a matter of right under Rule 24(a)(2), or alternatively, through permissive intervention under Rule 24(b)(1).

Before turning to the analysis under the Federal Rules, the Court will briefly address Madison's argument that Savant's intervention will violate the Preliminary Injunction Order entered in the Delaware Litigation. ECF No. 86 at p. 19. In relevant part, the Preliminary Injunction Order states that Savant is precluded from any attempts to: "foreclose on, seize or attempt to seize any assets of or in the possession of [Humanigen] or [Madison]," any attempt to "encumber or collect on the aforementioned assets outside of a litigation in Delaware or New Jersey," and "ask any Court or tribunal outside of Delaware to make a determination regarding ownership of any assets [or] intellectual property." *See* ECF No. 86-3. Additionally, the Preliminary Injunction Order states that "[n]othing in this Order prohibits Savant from litigating its claims against Humanigen and Madison in this Court or from seeking to intervene—if it believes it must do so to

safeguard its purported rights—in the proceeding styled *Madison Joint Venture, LLC v. Chemo Research S.L, et al.* No. 2:19-cv-8012 (JMV) (SCM) (D.N.J.)." *Id.*

Madison claims that allowing Savant to intervene on the basis that it is the alleged owner of the exclusive license at issue violates the Preliminary Injunction Order that prevents Savant from asking any other court outside of Delaware to make a determination regarding the ownership of any assets or intellectual property. ECF No. 86 at pp. 19-20. Savant, however, contends that it is only seeking to intervene in an effort to safeguard its rights in this litigation, which is expressly permitted in the Preliminary Injunction Order. ECF No. 89 at p. 8. Considering Savant's alleged rights at issue in this litigation, the Court finds that Savant's intervention in this matter is not precluded by Preliminary Injunction Order. As set forth below, the Court finds that Savant may intervene in this matter.

**i. Intervention under Rule 24(a)(2)**

Rule 24(a)(2) provides, in relevant part:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). "A party seeking to intervene as of right under this rule must meet four criteria: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir.1987). "If an applicant fails to prove any one of these four factors, intervention as of right is precluded." *Michaels Stores, Inc. v. Castle Ridge Plaza Assocs.*, 6 F.Supp.2d 360, 364 (D.N.J.1998). Courts in this Circuit have held that "the Court must accept as true the non-conclusory allegations made in support of the motion to

intervene." *Palladino v. Corbett*, No. 13-5641, 2014 WL 830046, at *1, n. 1 (E.D. Pa. Mar. 4, 2014); *see also Endoheart AG v. Edwards Lifesciences Corp.*, No. 14-1473, 2015 WL 6956603, at *2, n. 2 (D. Del. Nov. 6, 2015), *report and recommendation adopted*, No. 14-1473, 2016 WL 1317203 (D. Del. Mar. 31, 2016).

Turning to the first requirement, the Court finds that Savant's motion is timely. "Whether a motion to intervene is timely is determined from all the circumstances and, in the first instance, by the [trial] court in the exercise of its sound discretion." *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326, 328 (D.N.J. 2004) (quotations and citations omitted). In determining whether an intervention motion is timely, courts consider: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). Madison does not dispute that Savant has timely sought intervention, nor does it claim prejudice. The litigation is still in its early stages and fact discovery has yet to begin in this case. Therefore, the Court considers Savant's motion to be timely.

The Court also finds that Savant has shown a sufficient interest in this litigation. To intervene as a matter of right, Savant must show an interest "that is significantly protectable, meaning the interest must be a legal interest as distinguished from interests of a general and indefinite character." *Stuff Elecs. (Dong Guan) Ltd. v. For Your Ease Only, Inc.*, No. 20-4333, 2020 WL 7488643, at *3 (E.D. Pa. Dec. 21, 2020). "In general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." *Mountain Top*, 72 F.3d at 366. "Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Id.*

Madison argues that Savant cannot show that it has a legally cognizable interest in this litigation because Savant's interest is contingent upon the success of convincing a Delaware factfinder that Humanigen materially breached the MDC and that Savant has the right to reclaim its assets because of the breach. ECF No. 86 at pp. 16-17. As a result, Madison claims that Savant simply does not have a ripe interest this case. *Id.* at p. 17. Madison relies on *D.E. v. Cent. Dauphin Sch. Dist.*, No. 06-2423, 2010 WL 5111422, at *2 (M.D. Pa. Dec. 9, 2010) in support of its position. In *D.E.*, former counsel sought to intervene in a matter to recover attorney's fees under the ADA and related statutes. *Id.* at *1. The court denied intervention because the attorneys would only be entitled to fees if their client was found to be the "prevailing party" to the action and the action had not yet concluded. *Id.* Therefore, the court concluded that the former counsel had no legal cognizable interest at that point in time. *Id.* at *2. In addition to this issue, Madison claims that Savant cannot show Article III standing because Savant will not be entitled to relief unless and until a Delaware factfinder finds in its favor. ECF No. 86 at p. 18.

Savant, however, claims that its interest as the alleged legal owner of the intellectual property at issue in this case and its additional rights under the MDC constitute a sufficient cognizable interest in this litigation. ECF No. 78-1 at pp. 11-12; ECF No. 89 at pp. 5-6. To support its argument, Savant relies on *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326 (D.N.J. 2004). In *Princeton Biochemicals*, Rutgers, the State University of New Jersey, moved to intervene in a matter alleging that it was the true owner of the patent at issue. 223 F.R.D. at 327. The court concluded that Rutgers held a sufficient interest in the litigation since Rutgers was alleging ownership of the patent-in-suit. *Id.* at 329; *see also Endoheart*, 2015 WL 6956603, at *3.

In this case, Savant alleges that it is the legal owner and exclusive licensee of the Estani Data because all rights Humanigen possessed under the MDC reverted back to Savant due to

Humanigen's material breaches. ECF No. 78-3, ¶ 114. Savant also alleges that Defendants' misappropriation denied it certain rights under the MDC including the Milestone Payments, proceeds from the sale of the PRV, and a percentage of actual sales of benznidazole. ECF No. 78-3, ¶ 111. Madison does not dispute the existence of the MDC. Although Madison disputes that Savant is the legal owner of the exclusive license and its right to recover under the MDC, the Court must accept as true Savant's non-conclusory allegations that it has rights under the MDC.[3] Furthermore, in reviewing the allegations, the Court finds that Savant establishes standing by pleading an injury-in-fact, that the injury is traceable to Defendants, and that the injury is likely to be redressed by a favorable decision.[4] While Madison disputes Savant's allegations, the Court is nonetheless bound to read the complaint as true. Accordingly, the Court finds that Savant alleging it is the owner of the exclusive license at issue and alleging additional rights under the MDC provide it with a sufficient interest in this litigation. *See Princeton Biochemicals*, 223 F.R.D. at 329; *see also Endoheart*, 2015 WL 6956603, at *3.

Next, the Court concludes that Savant's interest would likely be affected or impaired if Savant were not permitted to intervene. "All that is necessary to satisfy this intervention requirement is a showing by the applicant that their interest 'might become affected or impaired, as a practical matter, by the disposition of the action in [its] absence.'" *Michaels Stores*, 6 F. Supp. 2d at 365 (quoting *Mountain Top*, 72 F.3d at 368). According to Savant, it will not be afforded a chance to protect its rights under the MDC without intervention. ECF No. 78-1 at p. 12. For example, Savant contends if the Delaware Litigation results in Savant sharing in some, but not all,

[3] Unlike *D.E.*, where the attorneys' interest could not possibly exist until the conclusion of the underlying lawsuit, Savant's interest arises from the MDC, which exists and provides Savant with certain rights.

[4] "Constitutional standing requires (1) injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005).

of Madison's recovery here, then Madison may prioritize certain claims to minimize Savant's recovery. *Id.* Such a potential outcome where Savant may be denied an opportunity to protect its rights and interests satisfies this requirement under Rule 24(a).

Finally, the Court finds that Madison likely will not protect Savant's interest in this litigation. "This requirement 'is satisfied if the applicant shows that representation of his interest "may be" inadequate; and the burden of making that showing should be treated as minimal.'" *Princeton Biochemicals*, 223 F.R.D. at 329 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, (1972)). Savant contends that Madison has "acted to frustrate Savant's rights at every turn" and that the parties are adverse in the Delaware Litigation. ECF No. 78-1 at p. 12. Madison, however, claims that Savant's interest is protected at least through jurisdictional discovery since Savant would also have to establish personal jurisdiction over Defendants in this litigation. ECF No. 86 at p. 17. While Madison and Savant may share some common interests such as establishing personal jurisdiction over the Defendants, these parties have an established adversarial history, and the Court is not confident that Madison will adequately represent Savant's interest in this matter. Therefore, the Court concludes that Savant has satisfied the criteria to intervene as a matter of right under Rule 24(a)(2).

**ii. Intervention under Rule 24(b)(1)**

The Court also finds that the requirements of permissive intervention are clearly met in this case. Pursuant to Federal Rule of Civil Procedure 24(b)(1)(B), "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." The decision to grant permissive intervention is "completely discretionary" with the Court. *Granillo v. FCA US LLC*, No. 16-153, 2018 WL 4676057, at *11 (D.N.J. Sept. 28, 2018). "In exercising its discretion, the court must consider whether the intervention will unduly delay or

prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Furthermore, permissive intervention involves practical considerations. *See*, *e.g.*, *McKay v. Heyison*, 614 F.2d 899, 907 (3d Cir.1980).

Savant claims that there is significant overlap between its claims and Madison's regarding issues of law and fact. ECF No. 78-1 at p. 13. Furthermore, Savant argues that its intervention would not cause any undue prejudice to Madison. *Id.* Conversely, Madison argues that Savant should not be permitted to intervene because it does not hold any legally cognizable interest, nor has it shown that its interests are not protected by Madison. ECF No. 86 at p. 19. Madison, however, does not dispute that there is significant overlap between its claims and Savant's claims.

Under Rule 24(b)(1), the Court considers whether the intervenor and the current party share common questions of law or fact, as well as practical considerations. Plainly, there is significant factual and legal overlap between the allegations in Madison's Amended Complaint and Savant's proposed complaint as both allege Defendants misappropriated the Estani Data by inducing Estani to disclose the data despite the existence of the exclusive license.

The Court is also cognizant of practical considerations. Savant maintains not only that it is the alleged owner of the exclusive license of the Estani Data, but that it is entitled to additional relief under the MDC including the Milestone payments, a percentage of the proceeds of the sale of the PRV, and a percentage of any sales of benznidazole. [5] Savant claims that if it is not allowed to intervene, it would be required to file a separate action to enforce its rights following the Delaware Litigation. ECF No. 78-1 at p. 13. To avoid the further expense and delay associated with a new lawsuit, the Court finds that granting the motion to intervene in this action would also

[5] The Court notes that Judge Wallace in the Delaware Litigation has concluded that Madison is responsible for obligations under the MDC. *See* Opinion and Order dated August 17, 2020 in the Delaware Litigation, ECF No. 78-6 at pp. 18-20.

best serve judicial economy. Based on the foregoing, Savant's motion for leave to intervene is **GRANTED.**

**B. Savant's Motion to Stay Proceedings**

The Court now turns to Savant's motion to stay proceedings. Weighing the parties' interests, potential length of stay, and critically, the implication that the Delaware Litigation will potentially have dispositive consequences for central issues in this matter, the Court recommends that jurisdictional discovery be completed between the parties, but further proceedings, including the filing of any dispositive motions, be stayed until the end of trial in the Delaware Litigation. Additionally, the Court recommends that any settlement during the pendency of the stay between the parties be subject to Court approval.

It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Depomed Inc. v. Purdue Pharma L.P.*, No. 13–0571, 2014 WL 3729349, at *2 (D.N.J. July 25, 2014) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976). In assessing the sustainability of issuing a stay, the Court considers "whether a stay will simplify issues and promote judicial economy, the balance of harm to the parties, and the length of the stay." *McDonald v. Novartis Pharm., Corp.*, No. 07-655, 2007 WL 4191750, at *1 (D.N.J. Nov. 20, 2007) (quotations and citations omitted).

The Court agrees with Savant and Defendants that a stay of further proceedings will simplify issues and promote judicial economy in this case. By staying proceedings, the Court will

avoid dissipating both the Court's and the parties' time and energy on litigating issues that may eventually be rendered moot by the Delaware Litigation.[6] It would make no sense practically to have the parties litigating issues in this Court when there is a risk of inconsistent determinations. *See, e.g.*, *Novartis AG v. HEC Pharm Co.*, No. 15-1647, 2015 WL 5440821, at *3 (D.N.J. Sept. 14, 2015) (finding that risk of inconsistent determinations favored a stay of proceedings). Accordingly, this factor weighs in favor of a stay.

In balancing the harm to the parties, the Court finds that this factor also weighs in favor of a stay of proceedings. Both Defendants and Savant set forth substantial harms that may result if this litigation proceeds. Defendants claim they should not be burdened with litigating claims while it remains uncertain whether this Court may offer Defendants a final judgment. ECF No. 87 at p. 7. Savant also claims that it may face significant prejudice because its ability to made whole may be jeopardized if Madison is able to settle claims in this Court before a decision is reached in the Delaware Litigation. ECF No. 78-1 at p. 10.

The Court, however, is cognizant that Madison has already invested significant resources in jurisdictional discovery in this matter and staying discovery benefits Defendants in further slowing down this case. ECF No. 86 at p. 13. Savant, however, has no objection to jurisdictional discovery continuing with certain procedural safeguards in place.[7] ECF No. 89 at p. 3, n. 2. Defendants also indicate that a limited stay could serve to preserve this Court's resources. ECF No. 87 at p. 10, n. 3. Thus, the Court finds that completing jurisdictional discovery, but staying all

---

[6] Additionally, the stay will be consistent with the Preliminary Injunction Order entered in the Delaware Litigation, which prevents Savant from requesting any court outside of Delaware from making a determination with respect to ownership of any assets or intellectual property. *See* ECF No. 86-3.

[7] Savant requests, among other things, that merits discovery remain stayed, dispositive motions be filed after the conclusion of the Delaware Litigation, and any settlement of this matter be subject to Court approval. ECF No. 89 at p. 3, n. 2.

further proceedings until the end of trial within the Delaware Litigation strikes an appropriate balance and minimizes harm to all parties.

Finally, the Court finds that the length of the requested stay is also reasonable. The Delaware Litigation is scheduled to begin trial on April 12, 2021 and will likely have a verdict by mid-May. In this litigation, the parties are currently engaged in jurisdictional discovery and have until March 31, 2021 to complete such discovery. ECF No. 94. The Court further notes that Savant is only requesting a stay on proceedings until the end of trial in the Delaware Litigation. ECF No. 89 at p. 5. Thus, even if the parties complete jurisdictional discovery by March 31, 2021, the Court finds that a stay of three to four months to ensure that the proper parties have standing to assert claims against Defendants in this litigation is reasonable. Accordingly, the Court recommends that jurisdictional discovery be completed between the parties, but the Court stay further proceedings, including the filing of any dispositive motions, until the end of trial and a verdict is reached in the Delaware Litigation.[8] Additionally, the Court recommends that any settlement during the pendency of the stay between the parties be subject to Court approval.

## III. CONCLUSION AND ORDER

In light of the foregoing, and the Court having considered this matter pursuant to Fed. R. Civ. P. 78;

**IT IS** on this **23rd** day of **March**, **2021**,

**RECOMMENDED** that Savant's motion to stay proceedings be **GRANTED in part**; and it is further

**ORDERED** that Savant's motion to intervene is **GRANTED**; and it is further

[8] If any party in the Delaware Litigation seeks to appeal and believes that this case should be stayed pending appeal, the party should make its motion at the appropriate time.

**ORDERED** that pursuant to L. Civ. R. 72.1 and Fed. R. Civ. P. 72, objections to this Report and Recommendation shall be filed within fourteen (14) days after service hereof. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. The Clerk of Court is directed to serve the parties with electronic notice upon filing this Report and Recommendation.

s/James B. Clark, III
**HONORABLE JAMES B. CLARK, III**
**UNITED STATES MAGISTRATE JUDGE**